# 11 CIV. 5762

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MICHAEL TORRES,

                      Plaintiff,                        **COMPLAINT PURSUANT**
                                                          **TO 28 U.S.C. §1331**

   -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION (DOCCS) f/k/a DEPARTMENT
OF CORRECTIONAL SERVICES (DOCS),
BRIAN FISCHER, WILLIAM A. LEE, KAREN
BELLAMY, LINDA HOLLMEN, ROBERT
CUNNINGHAM, LUIS GONZALEZ,
GERTRAUD C. ELLERT,

                                               Jury Trial Requested

                    Defendants.
--------------------------------------------------------------X

## I. NATURE OF THE ACTION

    1. This action seeks declaratory and injunctive relief on behalf of pro se plaintiff Michael Torres, in the custody of New York State Department of Corrections and Community Supervision hereinafter, DOCCS (f/k/a/ Department of Correctional Services) at Green Haven Correctional Facility for failing to accommodate his disability in DOCCS educational program and activities.

## II. JURISDICTION AND VENUE

    2. This Court has jurisdiction over this action under 28 USC § 1331 for the continuous violation of plaintiff's rights under the Americans with Disabilities Act (ADA) 42 USC § 1201 et seg and section 504 of the Rehabilitation Act, 29 USC § 794.

    3. Venue properly lies in this district under 28 USC § 1391 (b)(1) and (2). Plaintiff exhausted all remedies pursuant to Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). SEE ATTCHED GRIEVANCES.

## III. PARTIES

4. A.

PLAINTIFF-   Michael Torres, Green Haven Correctional Facility
                       P.O.Box 4000, Stormville, New York 12582-4000
                       Plaintiff's designated Din # is 95A0010

RECEIVED AUG 04 2011 PRO SE OFFICE

DEFENDANT 1-     DEPARTMENT OF CORRECTIONS AND COMMUNITY
                 SUPERVISION - 1220 Washington Ave., Bldg 2
                 Albany,NY 12226


DEFENDANT 2-     Brian Fischer, Commissioner DOCCS
                 1220 Washington Ave., Bldg 2
                 Albany, NY 12226


DEFENDANT 3-     William A. Lee, Superintendent, Green Haven Correctional Facility
                 P.O. Box 4000, Stormville, New York 12582-4000.

DEFENDANT 4-     Karen Bellamy, Director of Inmate Grievance Program (DOCCS)
                 1220 Washington Ave., Blgd. 2,
                 Albany, New York 12226.

DEFENDANT 5-     Linda Hollmen, Director of Education (DOCCS)
                 1220 Washington Ave., Blgd. 2,
                 Albany, New York 12226.

DEFENDANT 6-     Robert Cunningham, DOCCS 1220 Washington Ave., Blgd. 2,
                 Albany, New York 12226.

DEFENDANT 7-     Luis Gonzalez, Green Haven Correctional Facility
                 P.O. Box 4000, Stormville, New York 12582-4000.

DEFENDANT 8-     Gertraud C. Ellert, DOCCS 1220 Washington Ave., Blgd. 2,
                 Albany, New York 12226.

## IV FACTS

5. Plaintiff is incarcerated in New York State, Department of Corrections and Community

Supervision (DOCCS) at Green Haven Correctional Facility (GHCF), 594 Route 216 - PO Box

4000, Stormville, NY 12582. Plaintiff has been *exclusively* in the care, custody and control of

DOCS and DOCCS since 1995.


6. Plaintiff is being discriminated against by the DOCCS and its employees (listed

defendants), specifically those past and presently employed at GHCF, due to plaintiff's disabilities

(Plaintiff suffers from dyslexia). DOCCS and the listed defendants unwillingness to provide

accommodations impedes upon plaintiff's chances to achieve, among other benefits, a GED. This

unwillingness to accommodate plaintiff's disability amounts to discrimination which, along with

being a violation of the ADA and Rehabilitation Act also disqualifies plaintiff from benefiting from

DOCCS programs after and before release. i.e. earning early release from prison, higher paying prison jobs and positive rehabilitation into society, thus lessening plaintiff's chances of recidivism when released and of successfully reentering society. Denying plaintiff basic life skills to survive as a functional member of the human race is critical to the plaintiff and society at large, and results in plaintiff suffering a variety of damages.

7. Plaintiff's education background is reflected as follows: New York State Bronx County Court and DOCCS files indicate plaintiff is dyslexic with learning disorders. After several (failed) attempts to obtain accommodations for standardized testing for the TABE and GED Test on facility level (GHCF). On or about August 1, 2008, plaintiff composed and mailed a letter to Linda Hollmen, Education Director for DOCCS referring to plaintiff's dyslexia seeking accommodations to improve in his learning, to take the TABE and GED Tests. Plaintiff's received a reply (letter) from Linda Hollmen indicating Gertraud C. Ellert , Education Supervisor at GHCF is in the best position to assist plaintiff. In addition, Linda Hollmen's letter mentioned that documents related to plaintiff's dyslexia should not be more than five (5) years old.

8. Soon thereafter, Gertraud C. Ellert, Education Supervisor confronted plaintiff about his letter to Linda Hollmen. Gertraud C. Ellert made it clear to plaintiff she did not appreciate the letter and threatened to remove plaintiff from school for, as she stated ".. going over my head." During Gertraud C. Ellert scolding upon plaintiff about the letter, plaintiff mentioned to Gertraud C. Ellert that he needs to be reevaluated so his file will reflect a less than five (5) year evaluation as mentioned by Linda Hollmen. However, Gertraud C. Ellert continued to ignore plaintiff, repeating to plaintiff her displeasure about his letter to Linda Hollmen.

9. On or about July 2, 2009, plaintiff composed and mailed a letter to the "High School Equivalency Program and GED Testing", an agency in Albany, NY. Soon thereafter, on or about July 21, 2009, the GHCF Staff, namely the Education Department (Gertraud C. Ellert) and

Program Services Department (Robert Cunningham, Luis Gonzalez) removed plaintiff from school.

10. Plaintiff immediately conferred with a Inmate Grievance Worker and was reinstated to school. However, plaintiff is still being discriminated against and still not receiving accommodations to assist him in improving in his learning, and in obtaining a GED.

## V. CLAIMS FOR RELIEF

11. Defendants are public entities within the meaning of the ADA and the Department of Justice (DOJ) regulations, or are agents of public entities

12. Plaintiff is a qualified individual with disability as defined by the ADA

13. Gertraud C. Ellert (Defendant #8), is being sued in her official and individual capacities for discriminating against plaintiff because he has dyslexia, a learning disability. Under the American Disability Act Title II, and Section 504 of the Rehabilitation Act, Gertraud C. Ellert, failed to provide accommodations (in any form), to the plaintiff to assist him to participate in DOCCS programs in furthering his education, and to earn a GED. Gertraud C. Ellert was in the authoritative position to provide plaintiff with accommodations.

14. Gertraud C. Ellert (Defendant #8), is being sued in her official and individual capacities for discriminating and violating plaintiff's United States Constitution First Amendment Right thus abridging upon plaintiff's freedom to contact personnel and agencies other than her. Plaintiff's letters caused Gertraud C. Ellert to retaliate against plaintiff.

15. Gertraud C. Ellert (Defendant #8), is being sued in her official and individual capacities

4

for discriminating and violating plaintiff's U.S. Constitution Eighth Amendment Right against Cruel and Unusual Punishment by expelling plaintiff from school, thus continuously causing plaintiff to struggle with his dyslexia instead of providing plaintiff with the necessary tools to meaningfully and equally participate in DOCCS' educational programs and services.

16. Gertraud C. Ellert (Defendant #8), is being sued in her official and individual capacities for discriminating and violating plaintiff's rights under the ADA and the Rehabilitation Act. It was well within Gertraud C. Ellert's authority to provide plaintiff accommodations.

17. Luis Gonzalez (Defendant #7), Senior Correctional Counselor, Program Committee Chairman and during this period in question, was the Acting Deputy Superintendent of Program Services at GHCF is being sued in his official and individual capacities as it relates to not providing plaintiff his rights under the ADA and the Rehabilitation Act. Luis Gonzalez, held a authoritative position to protect plaintiff's rights as a disabled person and to correct the wrongs being inflicted upon plaintiff by the denial of proper accommodation and thus denying equal access to DOCCS programs and services.

18. Robert Cunningham (Defendant #6), Deputy Superintendent of Program Services and during period in question was the Acting Superintendent at GHCF (Currently working at another prison), is being sued in his official and individual capacities as it relates to not providing plaintiff his due rights under the ADA and the Rehabilitation Act. Robert Cunningham, held a authoritative position to protect plaintiff's rights as a disable person and to correct the wrongs being inflicted upon plaintiff by the denial of proper accommodations and denying equal access to DOCCS program and services.

19. Linda Hollmen (Defendant #5), DOCCS Education Director is being sued in her official and individual capacities as it relates to not providing plaintiff his dues rights under the ADA and

5

the Rehabilitation Act, Linda Hollmen, Education Director in DOCCS Main Office held a authoritative position to protect plaintiff's rights as a disabled person and to correct the wrongs being inflicted upon plaintiff by denial of equal access to programs and services and by denying proper accommodations.

20. William A. Lee (Defendant #3), GHCF Superintendent is being sued in his official and individual capacities as it relates to not providing plaintiff his dues rights under the ADA and the Rehabilitation Act. William Lee, answered plaintiff's grievance, as the superintendent of GHCF he held a authoritative position to protect plaintiff's rights as a disable person and to correct the wrongs being inflicted upon plaintiff by denying him equal meaningful access to DOCCS programs and services

21. Karen Bellamy (Defendant #4), DOCCS Inmate Grievance Director, Main Office is being sued in her official and individual capacities as it relates to not providing plaintiff his dues rights under the ADA and the Rehabilitation Act. Karen Bellamy, answered plaintiff's grievance, as the DOCCS Grievance Coordinator Main Office she held a authoritative position to protect plaintiff's rights as a disable person and to correct the wrongs being inflicted upon plaintiff by denying him equal meaningful access to DOCCS programs and services

22. Brian Fischer (Defendant #1), DOCCS Commissioner, is being sued in his official and individual capacities as it relates to not providing plaintiff his dues rights under the ADA and the Rehabilitation Act., Commissioner Fischer hold the authoritative position to protect plaintiff's rights as a disable person and to correct the wrongs being inflicted upon plaintiff by denying him equal meaningful access to DOCCS programs and services

## VI. PRAYER FOR RELIEF

23. The plaintiff suffers from dementia*, brain atrophy etc. as a direct result of the defendants failure to protect plaintiff's ADA and Rehabilitation Act rights and afford plaintiff equal protection due to his disabilities (Dyslexia. disorders). Plaintiff has been incarcerated for almost 19 years. Throughout plaintiff's incarceration he has been placed in DOCS/DOCCS education programs i.e. Adult Basic Education (ABE), Pre GED classes. After several years in ABE and Pre GED, plaintiff struggled with his class assignments. It is reported that plaintiff tries hard and it's reported by at least one of his teachers plaintiff is dyslexic. After several years in these DOCS/DOCCS education classes. Plaintiff has concluded he is unlikely to advance with furthering his education without some special help. Plaintiff feels socially awkward, suffers mood swings and aggressive behavior. Plaintiff experiences anxiety, sometimes accompanied by physical symptoms, in connection with tests. Plaintiff most significant problem is internalizing his feelings i.e. not fitting in with classmates, leaving him with the negative thoughts of dropping out of school, one of amongst other things * Dementia, as defined in the American Heritage Dictionary - 1. Deterioration of intellectual faculties, such as memory, concentration, and judgment, resulting from an organic disease or a disorder of the brain. It is sometimes accompanied by emotional disturbance and personality changes).

24. Failure to stimulate the brain results in two types of physical injuries; 1). Mental (The nonphysical brain) and; 2.) Organ damage (The physical brain). Brain development and function are activated when the human brain is stimulated through learning/education and development through stimuli - Failure to stimulated the brain through education and basic human skills result in atrophy.

<u>RELIEF REQUESTED</u>

25. For the defendants to provide plaintiff with the necessary tools to meaningfully and equally participate in DOCCS education programs and services, i.e. accommodations for

furthering his education, and for standardized Testing for the TABE and GED Tests - Furthermore, the defendants be held liable in exemplary damages and punitive damages for denying the plaintiff his rights under the ADA and Rehabilitation Act in the amt. of $5,000,000 and any further relief the court deems necessary.

Accommodations include but not limited to: Extended time; Use of a scribe; Use of a talking calculator or abacus; Supervised frequent breaks, etc.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___3___ day of _August_, 2011.

M. Tapp
Signature of Plaintiff

Inmate Number: 95A0010

Institution Address: Green Haven C.F.
594 Route 216
Stormville, NY 12582

I declare under penalty of perjury that on this ___3___ day of _August_, 2011, I am delivering this complaint to prison authorities to be mailed to the Pro Se Office of the United States District Court for the Southern District of New York.

M. Tapp
Signature of Plaintiff

*Test for Dyslexia*

FORM 2131.15 (REV. 6/06)

**STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES**

# INMATE GRIEVANCE COMPLAINT

| | Grievance No. |
|---|---|
| | 69267 - 10 |

G.H. _____ CORRECTIONAL FACILITY

Date 3 - 22 - 10

Name TORREZ _____ Dept.No. 95A0010 Housing Unit Shu - 13.

Program _____ AM _____ PM

*(Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident)\**

Description of Problem: (Please make as brief as possible) _____

_____

_____

S/A. _____

_____

_____

_____

Grievant
Signature _____

Grievance Clerk _____ Date: _____

Advisor Requested  ☐ YES  ☐ NO  Who: _____

Action requested by inmate: _____

_____

_____

This Grievance has been informally resolved as follows:

_____

_____

_____

_____

**RECEIVED**

MAR 2 2 2010

GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant
Signature _____ Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

\*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

Tested for Dyslexia                    CV67262
            3/19/10 Cu                              ①

# STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES
## INMATE GRIEVANCE

FROM: MICHAEL TORREZ

DIM: 95 A 0010

LOC: SHU-13

DATE: MARCH 14, 2010

SUBJECT:

Complaint against GERTRAUD C. ELLERT Agency #
20501, Education supervisor General; and ROBERT F
CUNNINGHAM, Agency # 20004, Deputy Supt Programs 3.
for it's believed by this petitioner that Ms Ellert
is abusing her powers, where she shall refuse
my right to program (school) and refused to Testing
me for Dyslexia (Learning Disability, in Retaliation for
a letter I sent to Linda Hollmem, Director of Education
in Albany, NY. in Violation of my Rights and American
with Disabilities Act and Milburn V Concept.

STATEMENT OF FACT:

RECEIVED
MAR 2 2 2010
GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

This is a furtherance to the ongoing problem
I am continuing to Face at the hands of the
Education Department principal Ms. Ellert, and the
Administration (Robert Cunningham Deputy of program)
at this Facility (Green Haven).

1

GH 67262 ②

THE REASON FOR THIS GRIEVANCE IS BECAUSE I BEEN REQUESTED FOR NUMEROUS TIMES TO GERTRAUD ALLERT, EDUCATION SUPERVISOR PRINCIPAL, AND ROBERT F CUNNINGHAM, DEPUTY OF PROGRAM, TO BE TESTED FOR "DYSLEXIA AND OTHER LEARNING DISABILITIES, BUT I BEEN DENIED REASONABLE ACCOMMODATION IN VIOLATION OF THE AMERICAN WITH DISABILITIES ACT.

BECAUSE MS ELLERT REFUSED TO TESTED ME FOR THE DYSLEXIA DISORDER, I WROTE A LETTER TO LINDA HOLMAN, DIRECTOR OF EDUCATION FOR THE STATE OF NEW YORK, DOCS REQUESTING A REASONABLE ACCOMMODATION AND TO BE TAKE THE "TABE" TEST DUE TO MY DISABILITIES. HER RESPONSE WAS THAT MS ELLERT AND ROBERT CUNNINGHAM, DEPUTY OF PROGRAM FOR GREEN HAVEN, WILL BE IN THE BEST POSSISSION TO HELP ME, SHE ALSO CONTACTED MS ELLERT IN REGARD OF MY PROBLEM. AFTER SHE CONTACTE MS ELLERT, MS ELLERT BECAME IRRITATED BECAUSE ACCORDING TO HER, "I WENT OVER HER HEAD AND I WROTED TO MS HOLLMAN.

THEN AFTER THAT SHE SUBSEQUENTLY STATED SHE COULD NOT HELP ME WITH MY PROBLEM. SO, I WROTE TO HIGH SCHOOL EQUIVALENCY PROGRAM TESTING IN ALBANY IN REGARDS TO TESTING FOR ADULTS WITH LEARNING DISORDERS, AND MS ELLERT INMEDIATELY REMOVED ME FROM THE SCHOOL FOR

RECEIVED MAR 2 2 2010

2 OF 8

G-tf 6 8 26 8 5

RETALIATION FOR MY COMPLAINTS TO HER SUPERVISOR. SEE EXHIBIT (1). HOLLMAN LETTER

THE FACILITY (GREEN HAVEN) + DON'T HAVE THE *claims that they* REASONABLE ACCOMMODATION FOR INMATES WITH DYSLEXIA DISORDER, AND I BEEN HAVING A LOT OF PROBLEM BECAUSE THE STAFF DON'T UNDERSTAND THAT I HAVE DISABILITIES PROBLEM. ALL MY TEACHERS ALREADY TALK TO MS EMERT IN THE PAST ABOUT MY LEARNING PROBLEM. I EXPLAINED TO HER THAT IF I HAVE A LEARNING OR COGNITIVE DISABILITY SUCH AS DYSLEXIA, DYSCALCULLIA, RECEPTIVE APHASIA OR WRITTEN LANGUAGE DISORDER, I HAVE BEEN REQUESTING ACCOMMODATIONS WHICH I DID.

THE ADA PROTECTS THE RIGHTS OF INDIVIDUAL WITH D REGARDLES OF WHETHER THEY ARE PRISONERS. THE TITLE II OF THE ADA STATES THAT "NO QUALIFIED INDIVIDUAL WITH DISABILITY SHALL, BY REASON OF SUCH DISABILITY, BE EXCLUDED OF THE BENEFITS OF THE SERVICES, PROGRAMS, OR ACTIVITIES OF A PUBLIC ENTITY, OR BE SUBJECTED TO DISCRIMINATION BY ANY SUCH ENTITY. MS EMERT ALREADY PUNICHED ME BECAUSE OF MY DISABILITY, BY HER REMOVED ME FROM SCHOOL ONE TIME, I AM BEING DISCRIMINATED AGAINST. SHE ALSO NOTIFY CAPTAIN ROYCE THAT I DON'T NEE A ASSISTANT IN A DISCIPLINARY HEARING (TIER III). THIS CAUSED ME MORE PROBLEM FOR EXAMPLE.

RECEIVED
MAR 2 2 2010
GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

3 OF 8

G-4 69262 (4)

ON MARCH 1, 2010 ON MY WAY BACK TO THE BLOCK
I SAW A PIECE OF PAPER IN THE FLOOR AND I PICKED
THE PAPER FROM THE FLOOR, C.O. CORBIN SAW ME AND
CONDUCTED A "RANDOM PAT FRISK", AT THE B. AND C. CORRIDOR.
HE FOUND THE PIECE OF PAPER AND I TOLD HIM THAT I
FOUND IT, HE PLACED ME IN SHU-CELL 13. THEN I WAS
ISSUE A TICKET BECAUSE THE BROWN SUBSTANCE WAS
TESTED POSITIVE FOR HEROIN.

RECEIVED
MAR 2 2 2010
GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

ON MARCH 2, 2010 I WAS SERVED WITH THE TICKET
AND REQUESTED AN EMPLOYEE ASSISTANT TO AID ME
IN PREPARING MY DEFENSE TO THE CHARGE. (SEE EXHIBIT
1, ASSISTANT FORM). I MET WITH THE ASSISTANT THE
SAME DAY AROUND          AND REQUESTED TO THE ASSISTANT
THAT I NEE ASSISTANCE IN THE HEARING BECAUSE OF
MY LEARNING DISABILITY (DYSLEXIA). THE ASSISTANT TOLD
ME THAT I MAY HAVE SOMEONE FROM SCHOOL.

ON MARCH 6, 2010 THE HEARING WAS COMMENCED
AND CONDUCTED BY CAPTAIN ROYCE, I ENTERED THE
ROOM AND I EXPLAINED TO THE CAPTAIN THAT I NEED
ASSISTANT BECAUSE MY LEARNING DISABILITY WHICH
IMPAIRES MY COMPREHENSION AT THIS TIME. THE HEARING
WAS ADJOURNED UNTIL MARCH 12, 2010. I ALSO PLEA
GUILTY, AND ASKED THE HEARING OFFICER FOR THE ASSISTANT
BECAUSE ACCORDING WITH ANOTHER INMATES THAT HE SAW
MY DOCUMENTS THERE WAS A LOT OF ERROR IN THE
DRUGS DOCUMENTS, NO SIGNATURE TO CERTIFICATE
U N O

(5)    C.H. 69262

THAT THE SUBSTANCE WAS TESTED POSITIVE FOR DRUGS.

ON MARCH 12, 2010 THE HEARING OFFICER TOLD ME THAT HE SPOKED TO THE EDUCATION STAFF (MS. ELLIOTT) AND HE WAS TOLD THAT I DO NOT NEED AN ASSISTANCE. SO I WAS FOUND GUILTY AND SENTENCE TO 90 DAYS SHU. WITHOUT THE OPPORTUNITY TO OBJECTED TO ANY DISCREPANCY HEARING VIOLATIONS.

RECEIVED
MAR 2 2 2010
GREEN HAVEN CORRECTION FACILITY
INMATE ASSISTANCE PROGRAM

IT'S literally IMPOSSIBLE FOR MS. ELLIOTT OR ANY EDUCATION STAFF THAT ISN'T A PSYCHIATRIC OR TRAINED IN THIS FIELD TO DETERMINE MY limited CAPACITY ON WHETHER OR NOT I HAVE A LEARNING DISABILITIES PROBLEM "DYLEXIA". PROFESSIONALS WHO POSSESS EXPERTISE IN SEVERAL DISCIPLINES ARE BEST QUALIFIED TO MAKE A DIAGNOSIS OF DYSLEXIA, BECAUSE THE TESTING MAY BE DONE BY A SINGLE INDIVIDUAL OR BY TEAM OF SPECIALISTS. A KNOWLEDGE AND BACKGROUND IN "PSYCHOLOGY", READING, LANGUAGE AND EDUCATION IS NECESSARY. ACCORDING WITH THE ORTON DYSLEXIA SOCIETY, THE TESTER MUST HAVE KNOWLEDGE OF HOW INDIVIDUALS LEARN TO READ AND WHY SOME PEOPLE HAVE TROUBLE LEARNING TO READ. AND MUST ALSO UNDERSTAND HOW TO MEASURE SPOKEN AND WRITTEN LANGUAGE. A-KNOWLEDGE OF APPROPRIATE READING INTERVENTION

5 OF 8

AS IS NECESSARY TO MAKE RECOMMENDATIONS.
SEE EXHIBIT (2). Information provided by DYSLEXIA SOCIETY.

MS. ELLERT IS NOT A PROFESSIONAL WHO
POSSESS OR QUALIFIED TO MAKE A DIAGNOSIS OF
DYLEXIA, NOR EVEN ROBERT CUNNINGHAM OR ANY
ONE IN THE EDUCATION DEPARTMENT HERE AT
GREEN HAVEN CORRECTIONAL FACILITY.



RECEIVED
MAR 2 2 2010
GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

I BEEN TRY NUMEROUS TIME TO GET TESTED FOR
DYSLEXIA AND OTHER LEARNING DISABILITIES, BUT
EVERY TIMES I INQUIRE ABOUT IT MS. ELLERT
THREATENE ME TO REMOVED ME FROM SCHOOL IN
WHICH SHE DID ONCE. AND WHEN I APPROACHED HER
IN REGARDS OF THIS SITUATION SHE THREW ME
OUT OF HER OFFICE AND TOLD ME TO WRITE
ALBANY.

THE SADISTICT DEPRIVATION OF MY RIGHTS PURSUANT
TO MILBURN V. COUGHLIN, ADA AMERICANS WITH
DISABILITY ACT. THESE DEPRIVATION WHERE CAUSE
BY ALL SUPERVISORY PERSONALS, IN GREEN HAVEN
WHO DELIBERATED DEPRIVE ME ADEQUATE REASONABLE
ACCOMMODATION FOR MY LEARNING DISABILITIES
PROBLEM AND FOR MY CONTINUOUS SEARCH FOR
ACCOMMODATIONS. I WAS HARASSED AND DISCRIMINATED
AGAINST, IN VIOLATION OF MY CONSTITUTIONAL
RIGHT, (8) AMENDMENT AND ADA AMERICANS
WITH DISABILITY ACT, plus CRUEL AND UNUSUAL

6 OF 8

G.H 69262

⑦

PUNISHMENT.

ACTION REQUESTED

THAT TO BE TESTED FOR DYSLEXIA AND OTHER LEARNING DISABILITIES IMMEDIATELY, SO I CAN PARTICIPATE IN EDUCATION, VOCATIONAL AND OTHER PROGRAMS AT A PROGRESSIVE RATE.

ALSO IT'S IMPERATIVE THAT THIS GRIEVANCE BE MAILED (COPY) TO SEVERAL PARTIES MENTIONED IN THE UPCOMING "CC" THAT PETITIONER MAY CIRCUMVENT ANY ATTEMPT TO UNDERMINED OR WITHHOLD THIS INFRACTION.

RESPECTFULLY SUBMITTED

M. TORRES

MICHAEL TORREZ, 95A0010

CC/FILE
LINDA HOLMAN, DIRECTOR OF EDUCATION DOCS.

U.S. DEPARTMENT OF JUSTICE WASHINGTON D.C.

PRISONER'S LEGAL SERVICE OF NEW YORK.



RECEIVED
MAR 2 2 2010
GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

# JUST THE FACTS.

**Information provided by the Orton Dyslexia Society**

RECEIVED
MAR 2 2 2010
GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

## Testing for Dyslexia

*Lorna Kaufman, Ph.D.*

**What is dyslexia?** Dyslexia is often referred to as a language based learning disability. It is the most common form of learning disability. Approximately 15% of the population have a learning disability and The National Institutes of Health report that 60% to 80% of those with learning disabilities have problems with reading and language skills. Individuals with dyslexia usually have difficulty with either receptive oral language skills, expressive oral language skills, reading, spelling, or written expression.

Dyslexia varies in degrees of severity. The prognosis depends on the severity of the disability, specific patterns of strengths and weaknesses with the individual, and the appropriateness of the intervention. It is not a result of lack of motivation, sensory impairment, inadequate instruction, environmental opportunities, low intelligence, or other limiting conditions. It is a condition which is neurologically based and often appears in families. Individuals with dyslexia respond successfully to timely and appropriate intervention.

**Why is an evaluation important?** If you suspect dyslexia, it is important to have an evaluation to better understand the problem. Test results determine eligibility for special education services in various states, and they also determine eligibility for programs in colleges and universities. They provide a basis for making educational recommendations and determine the baseline from which remediation programs will be evaluated.

**At what age should an individual be tested for dyslexia?** Individuals may be tested for dyslexia at any age. Tests which are selected will vary according to the age of the individual. Young children may be tested for phonological processing, receptive and expressive language abilities, and the ability to make sound/symbol associations. When problems are found in these areas remediation can begin immediately. A diagnosis of dyslexia need not be made in order to offer early intervention in reading instruction.

**Who is qualified to make the diagnosis of dyslexia?** Professionals who possess expertise in several disciplines are best qualified to make a diagnosis of dyslexia. The testing may be done by a single individual or by a team of specialists. A knowledge and background in psychology, reading, language and education is necessary. The tester must have knowledge of how individuals learn to read and why some people have trouble learning to read, and must also understand how to measure spoken and written language. A knowledge of appropriate reading interventions is necessary to make recommendations.

**What test is used to identify dyslexia?** There is no one single test which can be used to test for dyslexia. A battery of tests must be administered. Tests should be chosen on the basis of their measurement properties and their potential to address referral issues. Various tests may be used but the components of a good assessment should remain constant. Tests which measure expressive oral language, expressive written language, receptive oral language, receptive written language, intellectual functioning, cognitive processing, and educational achievement must be administered.

The Orton Dyslexia Society ● National Office ● 8600 LaSalle Road, Chester Bldg., Ste. 382 ● Baltimore, MD 21286-2044 ● (410) 296-0232 ● http://ods.org

EXHIBIT "2"

NYS DEPT. OF CORR'L SVCS
RECEIVED

AUG 0 7 2008

ACADEMIC EDUCATION

Michael Torres, 95-A-0010
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582-0010

8/1/08

N.Y.S DOCS Education Central Education
Building 2
State Office Campus
Albany, New York 12226

Dear Ms. Linda,

My name is Michael Torres (95A0010) and I am writing to
request your help. I understand that there is a chance that I can
given test modifications for the TABE test.
I understand that there will be a lot of paperwork to fill out
and documentation to be signed, but I am willing to do my part to
be able to give modifications.

I was in special ed. in school and have been diagnosed
dyslexic. I work hard in class, but it always seems that my
disability affects me during the TABE because of the limited time
constraints. I know I could do better if given a chance. I am
hoping that I can get an unlimited or extended time for the TABE
and then use the same modification for the practice GED and GED.

Please send me any paperwork I would need to start the
process of obtaining test modifications.

Thank you for your time.

                                        Sincerely,
                                        M. Torres
cc:file/MT                              Michael Torres #95A0010



STATE OF NEW YORK
DEPARTMENT OF CORRECTIONAL SERVICES
THE HARRIMAN STATE CAMPUS – BUILDING 2
1220 WASHINGTON AVENUE
ALBANY, N.Y. 12226-2050

BRIAN FISCHER
COMMISSIONER

KENNETH S. PERLMAN
DEPUTY COMMISSIONER
PROGRAM SERVICES

November 3, 2008

Mr. Michael Torres
95A0010
Green Haven Correctional Facility
Stormville, New York 12582

Dear Mr. Torres:

This is in response to your letter dated August 1, 2008 regarding testing accommodations for the TABE test.

In order to provide you with accommodations for standardized testing, you have to provide the Education Supervisor with documentation from a qualified professional attesting to the disability from which you suffer and the accommodations you were receiving prior to incarceration. The documentation you provide should not be more than five years old.

In addition, by copy of this letter, I am requesting that Ms. Ellert, Education Supervisor at Green Haven Correctional Facility, speak with you. Ms. Ellert is in the best position to provide you with assistance on both matters, your academic placement and request for test accommodations.

Sincerely,

Linda Hollmen

Linda Hollmen
Director of Education

cc:    Supt./Green Haven C.F.
       DSP/Green Haven C.F.
       Central Files



Michael Torres #95A0010
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

July 2, 2009

Highschool Equivalency
Program & GED Testing
P.O. Box 7348
Albany, New York 1224-0348

To Whom it may concern:

    I am writing in regards to G.E.D. testing for adult persons
with learning disorders. I would to be informed as to whether you
or D.O.C "Department of Correctional" have any special testing
for person with learning disorders, "Dyslexia", etc; if so, can
you please inform me as to how I can go about getting special
testing or tested for dyslexia.

    If for any reason(s) my request is denied, please inform me
of the reason(s) for the denial in writing, and provide the name
and address of the person or entity to whom I can write too.

    Thank you for your time I am looking forward in hearing from
you.

                                        Sincerely,

                                        M Torres

                                        Michael Torres #95A0010

CC:File/MT

NO. 4804   **Academic Education Program Policies**

SEP 2 0 2006
DATE                    PAGE 8 OF 9

## Appendix A

### REQUEST FOR WAIVER

### FROM THE MANDATORY EDUCATION POLICY

INMATE NAME: _Michael Torres_  DIN #: _____  FACILITY: _GHCF_  CELL LOC. _____

CLASS: _Pre Ged 1_ _____  DATE _July 20, 2009_ (Waiver valid for 1 year)

**I. REASON FOR REQUEST**

1. _____ Disciplinary

2. __X__ Failure to Progress

3. _____ Medical, Psychological, Emotional reason

4. _____ Other (Explain below)

**II. LAST THREE SETS OF ACHIEVEMENT TEST SCORES**

(List for Reason #2; include for other reasons if available)

| DATE | FORM | LEVEL | READING TOTAL | MATH TOTAL |
|------|------|-------|---------------|------------|
| 2/09 | C    | m     | 8.3           | 6.4        |
| 3/09 | 16   | m     | ~             | 5.3        |
| 11/08 | 9   | D     | 68  m9        | 7.2        |

**III. SPECIFIC REASON FOR WAIVER** (To be completed by inmate's teacher if inmate is currently enrolled, or by the inmate's counselor if not currently enrolled. Use additional attached sheets if needed.)

Mr. Torres has been in the academic program at GHCF for many years. After much effort by myself teacher, in both individual and group lessons he continues to be inconsistent in his grades fluctuating up and down 1-2 grade levels; therefore, he is not progressing and removal is recommended at this time.

**IV. APPROVAL**

Teacher/Counselor _____ C. Senbel Teacher IV _____ Date _July 20, 2009_

Education Supervisor _____ T Elboy Ed Supr _____ Date _July 20, 2009_

Act. Deputy Supt. for Programs _____ Date _7/21/09_

**V. QUARTERLY REVIEWS**

| DATE | COUNSELOR | ACTION RECOMMENDED | |
|------|-----------|---------------------|---|
| _____ | _____ | ____ Continue Waiver | ____ Assign to School |
| _____ | _____ | ____ Continue Waiver | ____ Assign to School |
| _____ | _____ | ____ Continue Waiver | ____ Assign to School |
| _____ | _____ | ____ Continue Waiver | ____ Assign to School |

"Exhibit" A

```
                    INMATE PROGRAM ASSIGNMENT
                        INQUIRY SCREEN                             KIPYM88
               CURRENT FACILITY: 080 - GREEN HAVEN
          DIN: 95A0010   NAME: TORRES, MICHAEL
TITLE INDUSTRIES WORKER I          ITEM 922083   FAC GREEN HAVEN
  SHOP IND. FOOD SERVICE-NON TRAINING FROM 05/28/07 TO 06/03/07  P.M.     $  .1600
END REASON: LATERAL CHANGE                                              MTWTFSS
                                                                       YYYYY__

TITLE INDUSTRIES WORKER I          ITEM 922022   FAC GREEN HAVEN
  SHOP IND. FOOD SERVICE-NON TRAINING FROM 04/17/06 TO 05/27/07  P.M.     $  .2200
END REASON: LATERAL CHANGE                                             MTWTFSS
                                                                       YYYYY__

TITLE UNKNOWN                      ITEM 042000   FAC GREEN HAVEN
  SHOP UNEMPLOYED/UNASSIGNED (2)       FROM 01/16/06 TO 04/16/06  P.M.     $  .0750
END REASON: RCHED WAIT LIST                                           MTWTFSS
                                                                       YYYYY__

TITLE STUDENT                      ITEM 522211   FAC GREEN HAVEN
  SHOP PRE-GED (1)                     FROM 07/26/04 TO 07/26/09  A.M.     $  .1750
END REASON: LACK OF SKILL                                            MTWTFSS
                                                                       YYYYY__


    PRESS <PF1> - MENU, <PF7> - SCROLL BACKWARD, <PF8> - SCROLL FORWARD
```

"Exhibit" B

G.H. 69262

(10)

To: Deputy Superintendent Of Programs

From: Michael Torres #95A0010

Re: Testing For Disabilities

Date: 7/21/09

Dear Sir/ Ma'am,

I am writing you this letter requesting that I be tested for Dslexia. I don't know if I am contacting the right person, but I was taken out of school for no apparent reason other than the fact I am not progressing as fast as other individuals without disabilities and according to ADA Americans with Disabilities, protects the rights of Prisioners with disabilities , Penn.D.O.C V . Yesky,118 S CT. 1952.524 U.S. 206 (1998) title II of the A.D.A states that " No qualified individual with a disabilities shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,programs ,or activities of a public entity, or be subjected to discrimination by any such entity.

I look forward to hearing from you in the near future, and thank you for your time and concern in this matter.

M. TORRES
Michaèl Torres #95-A-0010

CC: file



You're still in school + have not been removed.

AchDSP

RECEIVED
MAR 2 2 2010
GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

Attachment B                    NO. 2614,  Reasonable Accommodations for Inmates with Disabilities

                                DATE    MAR 2 0 2008    PAGE 5 of 5

Revised (02/04)              STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES
COPY LOCALLY                 **REQUEST FOR REASONABLE ACCOMMODATION**
AS NEEDED
                             *Green Haven*  _____ Correctional Facility

| | | |
|---|---|---|
| Inmate's Name | | |
| **Michael Torres** | DIN# **95A0010** | Date **2/26/10** |

**INMATE'S REQUEST**

I request reasonable accommodation to participate in the following program and/or service:

*Educational programs, including GED class — and test*

I am limited in my ability to (explain disability or limitation): *to read, understand, and*

*learn.*

The accommodation requested is: *testing for dyslexia and other learning disabilities*

(Sign and forward to the Deputy Superintendent for Program Services)    *M. TORRES*
                                                                          Inmate's Signature

**REC'D BY DSP**

_____    _____    _____
(DSP Name)                 (Signature)                 Date

**MEDICAL VERIFICATION**

Disability _____

Functional limitations _____

No medical verification is on file. Follow-up appointment scheduled?    ☐ yes    ☐ no

Date inmate notified of pending medical evaluation/consult: _____

_____    _____    _____
(Medical staff name - title)    (Signature)            Date

**REASONABLE ACCOM. DETERMINATION**

The above requested reasonable accommodation has been:    ☐ Approved    ☐ Modified    ☐ Denied

The specific accommodations approved are: _____

Explanation of modification or denial: _____

_____    _____    _____
(Inmate's Signature)        (DSP or designee signature)    Date

**INMATE RECEIPT**

☐ I agree    ☐ I disagree    with this determination.

I understand my right to file a grievance in accordance with Directive #4040, "Inmate Grievance Program"

Signature _____    Date _____

Original    - Guidance Folder
Copies     - Inmate, Superintendent, Medical, Parole, ADA Coordinator (Central Office)

RECEIVED

MAR 2 2 2010

GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

*GH 69262*

(11)



## REQUEST FOR REASONABLE ACCOMMODATION

I request reason accommodation to participate in the following program and/or service:

Educational programs including GED class and test.
I need a test to see how serious my learning disabilities and dyslexia are so that I am able to participate in educational and vocational programs and get all the benefits of these programs.

I am limited in my ability to (explain disability or limitation):

To read, understand, and learn.

The accommodation requested is: Testing for dyslexia and other learning disability. A test for learning disabilities, and the ability to participate equally in programs as those who do not have learning disabilities.

Inmate's Signature

cc: File/MT

*M. Torres*

Michael Torres #95A0010



RECEIVED

MAR 2 2 2010

GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

C.R. 67262

(13)

To: Deputy superintendant of Programs
From: M. Torres 95A0010
Re: Testing for Dslexia
Date: 2/26/10


Dear sir/ma'am,

   I am writing you this letter requesting that I be tested for Dslexia. I've try numerous time to get tested for Dslexia and other learning disabitity, but every time I inquire about it, Ms. Ellert threartens to transfer or removed from school in wich she attnded twice and did once.
   The facility dosen't have any proof on file on my learning disability. In the past I've shown Ms. Ellert, cour document stating that I have a learning disability. I need to be tested for dslexia and other learning disbility, so I have on file and get the proper help that I needs; so I can participate in eaducation and vocational and other pragrams at a progressive rate. I eaclosed are docment on everthing I've done. I look forward to hearing from yoo in the near future, and thank you for your time and concern in this matter.

Michael Torres
95A0010

cc: File MT
Prisoner's Right's Project
U.S. Department of Justice civil Right
International Dyslexia

RECEIVED
MAR 2 2 2010
GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

G H 6 9 2 6 7

(14)

To: Ms. Ellert

From : Michael Torres#95-A-0010

Re: Re- Placement in School

Date: 7/21/09

Dear Ms. Ellert,

I Am    writing you because I was removed from school. I would like to know why my
teacher removed me, if my last grades showed improvement in both reading and math? Also in
my last evaluation she said that I was improving and that she was very proud of me, and happy
for me. Then why was I removed?

.In the past I have written to albany trying to find out information on the  testing for people
with disabilities, and If so, how can I go about getting special accommodations.

In our discussion, you told me that I shouldn't have went over your head. My teacher told me
that I should speak with you about the matter and I did. At the time I didn't know that I was
doing anything wrong, all I was trying to do is get help, which I am entitled to under the ADA
Americans with Disabilities Act. The ADA protects the rights of all disabled individuals,
regardless of whether they are prisoners. Penns. D.O.C  V. Yesky,118 Sct. 1952,524 U.S.
206(1998). Title II of the ADA states that "no qualified individual with a disability shall, by
reason of such disability, be excluded of the benefits of the services, programs, or activities of a
public entity, or be subjected to discrimination by any such entity."

By you removing me from school, I am being discriminated against. In the past, I have shown
you court documents stating that I have a disability. I know that my teacher and one other
co-worker spoke to you in the past about my disability. So therefore, I am  respectfully asking
that I be placed back in the school program and that I be tested for disability.

If you receive anything from anyone in albany for this decision, I would like to get that
information, e.g. Names ,addresses etc, so that I can accurately make my case.

I thank you in advance for any assistance in this matter of the uptmost importance to me.

**NOTE: Letter written by Ivan Torres**

Michael Torres # 95-A0010

Cc: File

R E C E I V E D

MAR 2 2 2010

GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

*Torres*

C-11-69262

(15)

Test Report for 95A0010

ID Number: 95A0010
Test Date: 06/10/09
Run Date: 06/10/09
Page No: 15

zarolnick
TABE 9/10 Basic Ed
ms zarolnick
080
Entire group

| Subtests | L/F | NC | NA | SS | GE | NP | NRS | NS | OM | Predicted GED |
|---|---|---|---|---|---|---|---|---|---|---|
| Reading | M9 | 44 | 50 | 557 | 8.3 | 70 | 4 | 6 | 80 | Reading 390 R |
| Math Compu | M9 | 37 | 40 | 554 | 8.0 | 77 | | 7 | 80 | Math 360 R |
| Applied Math | M9 | 27 | 49 | 484 | 5.4 | 38 | | 4 | 100 | Science 380 R |
| | | | | | | | | | 22 | Soc/Std 390 R |
| Total Math | | 64 | 89 | 519 | 6.4 | 59 | 4 | 5 | | I = Instruct |
| | | | | | | | | | | R = Review |
| | | | | | | | | | | T = Test |

L/F=Test Lev & Frm   NC=No. Correct
SS=Scale Score        GE=Grade Equiv        NA=No. Attempted
NRS=Literary Level    NS=National Stan      NP=National %ile
                                            OM=% Obj. Mastered

| Objectives | Score | MST | Percent |
|---|---|---|---|
| **Reading** | | | |
| M01 INTRP GRAP | 4/ 5 | + | 80 |
| M02 WD IN CONTX | 4/ 4 | + | 100 |
| M03 RECALL INFO | 12/13 | + | 92 |
| M04 CONST MEAN | 10/14 | P | 71 |
| M05 EVAL/EX MNG | 14/14 | + | 100 |
| Subtest Avg | | | 88 |
| | | | |
| **Math Compu** | | | |
| M11 ADD WHL NUM | 6/ 6 | + | 100 |
| M12 SUB WHL NUM | 6/ 6 | + | 100 |
| M13 MUL WHL NUM | 7/ 7 | + | 100 |
| M14 DIV WHL NUM | 5/ 6 | + | 83 |
| M15 DECIMALS | 6/ 7 | + | 85 |
| M16 FRACTIONS | 7/ 8 | + | 87 |
| Subtest Avg | | | 93 |
| | | | |
| **Applied Math** | | | |
| M21 NUM OPERATN | 7/10 | P | 70 |
| M22 COMP CONTXT | 3/ 4 | + | 75 |
| M23 ESTIMATION | 2/ 5 | - | 40 |
| M24 MEASUREMENT | 2/ 6 | - | 33 |
| M25 GEOMETRY | 4/ 6 | P | 66 |
| M26 DATA ANALY | 4/ 7 | P | 57 |
| M27 STAT/PROB | 0/ 4 | - | 0 |
| M28 PRE-ALG/ALG | 2/ 4 | P | 50 |
| M29 PROB SOLVG | 3/ 4 | | 75 |
| Subtest Avg | | | 54 |
| | | | |
| Total Average | | | |

*Last Scores:*

*(R) m level.  ço ———↑*

*(M) m level 5.3 ↑*

*Great News*
*You went*
*up in Both*
*Reading & Math*
*Good Job*
*Ms Z*

RECEIVED

MAR 2 2 2010

GREEN HAVEN CORRECTION FACILITY
INMATE GRIEVANCE PROGRAM

Copyright © by CTB\McGraw-Hill, Inc. All Rights Reserved.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

------------------------------------X

IN THE MATTER OF THE APPLICATION OF :
MICHAEL TORRES,

                    Petitioner, :

      -against-

LARRY SHEEHAN,

                  Respondent :

------------------------------------X

**AFFIRMATION IN OPPOSITION**

Index No. 8806-99

STATE OF NEW YORK    }
                   } ss.:
COUNTY OF WESTCHESTER  }

**LARRY SHEEHAN,** under penalty of perjury and pursuant to rule 2106 of the C.P.L.R., hereby affirms and states:

    1.  That I am an attorney duly admitted to practice law in the State of New York.

    2.  That I am the attorney who represented the Petitioner in the above entitled action and that I am familiar with the facts of this case.

    3.  That I submit this affirmation in opposition to the Petitioner's Order to Show Cause.  This affirmation is based upon information and belief, the sources being files maintained by my office which I believe to be true and accurate, and proceedings heretofore held.

    4.  That I was assigned to represent the petitioner in Bronx Supreme Court pursuant to County Law 18-b.

    5.  The petitioner was charged with murder in the second degree and other related charges.

    6.  The petitioner was convicted after trial to consecutive terms of 20 to life, 8-16, 2 1 3 to 7, and 2 1/3 to 7 respectively.

Therefore I am disposed in this family, to represent the appellant on appeal for the sum of five thousand dollars.

8.  I took on this task for an exceptionally reasonable sum because it was my belief that the petitioner who is mentally handicapped and turned down a pre-trial offer to a manslaughter plea with a 8-24 sentence to turn States evidence and declined after conversations with his co-defendant Noel Bonilla, needed all the legal help he could get.  To this day I still feel I should have convinced Mr. Torres to take the guilty plea.

9.  The record on appeal exceeded one thousand pages and the appellant's brief was 43 pages long.

10. Prior to trial, as is my practice I supplied Mr. Torres with voluminous pages of discovery.  Many of these items were redacted by the prosecution.  At trial we were able to see the unredacted portions of the discovery. The unredacted items of discovery which Mr. Torres now seeks was never in my possession.

11. The petitioner has requested several times that I send him all pre trial motions and copies of my trial file.  Everything I have in my file was given to him during the trial.  In April of 1997, Mr. Torres indicated in a letter that he received all the reports but lost them.  I no longer have the case file as it was thrown out after the appeal.  The only items I have in my possession concerning the Torres case are the appellant and respondent's briefs and the decision from the First Department.

WHEREFORE, your affirmant respectfully requests that the relief sought in the within Order to Show Cause be Denied, and for such other and further relief as this court may deem just and proper.

DATED: Scarsdale, N.Y.
        July 9, 1999

                    Respectfully submitted,

                    Larry Sheehan

                    Larry Sheehan

TO:   Michael Torres 95-A-0010
      Attica Correctional Facility
      Attica, NY 14011-0149



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF THE BRONX                    PART 21

-------------------------------------------X
                                           :
THE PEOPLE OF THE STATE OF NEW YORK         :
                                           :        Ind. No.3063-92
        -against-                           :
                                           :
    MICHAEL TORRES,                         :
                                           :
                    Defendant.              :
-------------------------------------------X



## PRE-SENTENCE REPORT

        Pursuant to C.P.L. Sections 390.40, 390.50, 390.60 and
400.10, this memorandum is respectful submitted to assist
the Court in determining sentence in the above-captioned
matter.  Also it is respectfully requested that this
memorandum be incorporated as part of the Court record in
this matter.


                    LARRY SHEEHAN
                    111 BROOK STREET
                    SCARSDALE, NEW YORK 10583
                    (914) 723-0434

... ... ... ... ... ... ... ...

cept the People's offer of a manslaughter conviction with an
eight and one-third to twenty-five (8 & 1/3-25) sentence.
Unfortunately, this agreement was contingent on a package
deal and the co-defendant, ▆▆▆▆ ▆▆▆▆▆ refused to be a part
of the bargain.

## II. BACKGROUND HISTORY

Mr. Michael Torres was born on October 6, 1972.  He was
given the name, Eduardo but goes by his middle name and was
the second child for his mother and father living in an in-
tact loving family for the first eight years of his young
life.  At this tender age his father and mother separated
and Michael was thereafter reared by his mother and paternal
grandmother.

Mr. Torres has had lifelong learning problems which
were first acknowledged when he was left back in the second
grade.  Since that time he has received special help in math
and reading.  Unfortunately to no avail. At the present time
he is unable to read or write.

Mr. Torres was described by one school teacher as a
likable young boy who is so ashamed of his lack of learning
skills that it is hard for him to confront it.

(4)

At the age of thirteen, he was unable to figure out the simple subtraction of five minus three.   Multiplication and division are simply non-existent in his world.

Based on several conversations with Mr. Torres it has become apparent that Michael became a truant after his father's death while Michael was a teenager.

In August of 1993, Mr. Torres was evaluated at my request pursuant to Criminal Procedure Law 730.30 as to his fitness to proceed to trial.   Although he was found fit to proceed it should be noted that he was declared mildly retarded.   He did not know what a jury was or its function. The recommendations of the doctors was to slowly explain court procedures to the defendant.

## III. PRESENT OFFENSE

On April 6, 1992, Mr. Torres was arrested and charged with murder in the second degree and other assorted charges stemming from an incident where he and his co-defendants shot and killed a local drug dealer and also shot and wounded several of his associates.

(5)

Proceedings

account the information provided by counsel as
to his client concerning his intellectual and
mental abilities and/or status, that this
Court on the count of Murder in the Second
Degree, sentence Mr. Torres to a term of
twenty-five years to life; that on the charge
of Attempted Murder in the Second Degree, he
be sentenced to -- he be sentenced to a term
of ten years to twenty years and that as to
the Assault in the First Degree, he receive a
sentence of two-and-a-third to seven years,
all of those charges to run consecutive to
each other.

    COURT CLERK:  Mr. Sheehan, you wish
to make a statement?

    MR. SHEEHAN:  Yes.  I'm going to ask
that the pre-sentence report I submitted to
the Court be incorporated into the record.

    Judge, Mr. Torres standing before you
is a young man who has never been convicted of
a crime before and is now facing mandatory
incarceration, mandatory fifteen years at the
very least.

    I have had an opportunity over the
last two or three years to speak to Mr. Torres

Proceedings

1    and I can tell the Court, as an officer of the
2    Court, he is mildly retarded.  I did have
3    difficulty explaining things to him, had to go
4    over things two or three sometimes four or
5    five times.  I have confirmed that by not only
6    reviewing the 730 report, but also by
7    reviewing school records of Mr. Torres.
8                Judge, prior to the actual trial
9    here, Mr. Torres and Mr. Soltero, his
10   co-defendant, were offered eight-and-a-third
11   to twenty-five, but it was a package deal.
12   Mr. Torres was willing to take it and as the
13   Court is aware, Mr. Soltero was willing to
14   take it, but as the Court is aware Mr.
15   Bonilla, who was holding the string so to
16   speak, he refused to take it.  It was a
17   package deal and unfortunately we had to go to
18   trial.  As a result of that, Mr. Torres is
19   facing, at the very least, double what was
20   originally offered, almost double what was
21   originally offered.
22               He's mildly retarded, Judge.  He's in
23   a different position than Soltero and
24   Bonilla.  He's not the leader here, he's
25   clearly a follower.  I'm going to ask the

The appellant is a thirty-three (33) year old man who was born in New York City in 1977 and lived with his mother. Mr. Torres was the product of a broken home.

His father, who was an alcoholic eventually took his own life. The appellant has a history of psychiatric problems, as a result he received special education during his school years. He has one son from a union with a Joanne Martinez. He can not read or write and was diagnosed with a learning disability and personality problems at an early age.

Prior to trial the appellant was examined pursuant to Criminal Procedure Law Section 730.30 for a psychiatric evaluation prior to trial. It was determined during examination that Mr. Torres did not know the function of a jury and was diagnosed as a man of limited intelligence and limited ability to tolerate frustration. The doctors determined that he had a only a basic understanding of the function of the Court.

Psychological testing revealed an I.Q. in the mildly retarded range.

There are numerous factors which must be taken into consideration in determining an appropriate sentence. Among them, the nature of the crime, the circumstances of the defendant, the need for societal protection, and the prospects of the defendant's rehabilitation.

(41)

TORRES, MICHAEL                                  -5-                          CASE # XS9407255

While the defendant refused to provide a statement, his capacity for violence appears evident in the instant offense.

Herein, the defendant in concert with others shot a gun into a crowd causing the death of ▮ ▮and serious injury to other individuals.

## SOCIAL HISTORY

### FAMILY AND ENVIRONMENT

The defendant refused to be interviewed by this department therefore the following information was obtained the Criminal Justice agency report dated April 7, 1992. The defendant stated in the Criminal Justice agency report, he resided at 507 We t 139th Street, #3D, New York, New York 10031 with his mother ▮▮▮ ▮▮▮▮.

### EDUCATION AND EMPLOYMENT

The Criminal Justice agency report did not indicate this defendant's highest level of completed education. However, it did state whether the defendant reported no work history.

### PHYSICAL AND MENTAL HEALTH

The defendant is five feet five inches tall; however, his weight is unknown. In view of the defendant's refusal to be interviewed by this department information regarding his present physical and mental health is unknown.

### SOCIAL SERVICE INTERVENTION

Since the defendant refused to be interviewed by this department, it is unknown whether he is in need of treatment and/or training.

TORRES, MICHAEL                    -6-              CASE # XS9407255

## RESULTS OF NEEDS ASSESSMENT & EVALUATION

In light of the violent nature of the instant offense, the defendant may benefit from counseling and guidance.  He may also benefit from further educational/vocational training.  However, his current needs assessment and evaluation are unknown as he refused to be interviewed by this agency.

## EVALUATIVE SUMMARY

As the defendant refused to be interviewed no information as to his social circumstances is known.

His ruthless actions herein clearly demonstrate his capacity for reckless and violent behavior.  The defendant represents a serious danger and threat to the safety of other in the community and the outlook for his future adjustment is most unfavorable at present.

Attested by:                SMYLA JONES
                            Probation Officer

Reviewed by:                D. JONES  11-7-94
                            Supervising Probation Officer

Submitted by:               Robert Nunz
                            Branch Chief

11/7/94
10:50 AM
SJ/CC

state of New York Department of correctional Services
Inmate Grievance Complaint

From: Michael Torres
Dim: 95A0010
Loc: SHU-3
Date: 3/24/10
Re: Complaint against The Education Supervisor General:

     I worte to Ms. J. Rosario from the F.O.I.L Offcer requesing to review my disposition file and Eduation file, for My appeal. I saw the SHU Consires Ms. Jackien and requesed, if she can fine anything that indicate that I was remore from school, for failue to progree in Scool. Ms. Jackicen came back the next day and stated that she went to see Gertraud C. Ellert Agency#20501, Offcer and requesing to review my Education file. Ms. Jackicen stated that she search my file and didn't fine any waiver form that stated that I was remove from my program.

     On 3/18/10, I receive my F.O.I.L, and in siay was a waier form and Inmate Program Assignment Inquiry Screen. They both states that I was remove from progam, lack of skill on 7/26/04 to 7/26/09, and failure to progress on 7/26/09, see Exhibit "A/B; not only that it show controdion on her behalf, but it also show malice by misleding me and Ms. Jackien, by stating that I

was never revome from Program, and for stating that, the
documend didn't exsist, see "Exhibit" from my first grievance
on requsting to be teted for "Dyslexia" and other learning
disadiliy and discrimination.

Under Americans with Disabilities Act. (ADA) witch
states that the (ADA) protects the rights of all disabled
individuls, regardless of whether they are prisoners
pennsylvania Department of corrections v. Yeskey,
N 85. Ct. 1952, 524 U.S. 206 (1998) Title II of ADA
state that "no qualified individual with a disability
benefite of the services, programs or activites of any such entity;"
Not only that she is in violations for denied me, my right to get teted
for "Dyslexia" She also is in violations of my "First Amendment Righ
(The Right to Communicate with the outstsde world.)

Under First Amendement Right, state that prison authorities
don't have absolute power to limit your right communicate.
By her telling me not to write Albany and revome from my
Program for writing the Edueation Director Ms. Hollman Lind, and
the High School Equivalency program for testing in Albany

I also would like to add that I spok to, Dr krems
about my mental health issue in regard to my learning disability
Mr. krems stated to me there's nothing he can do for me
because he only deal with individual who one thinking
of committing suicide. I ask him to put it in writing that
I bought this issue to his attention, he told me he'll get _
back to me. the next day he told me his supervisor said
know with on Explenation

Action taken, I will like this grievance be place be place in her file

CC: file Mt
Prisoner's Legal Services
Prisoner's Right project
U.S. Department of Justice
Civil Right Division Disability Right
International Dyslexia Association

M. Torres
95A0010

| State of New York Department of Correctional Services | Grievance Number GH 69267 -10 | | Date Filed 3/22/10 |
|---|---|---|---|
| **Inmate Grievance Program** Superintendent William A. Lee | Title TEST FOR DYSLEXIA | | Code 8 |
| | Superintendent's Signature *[signature]* | Date 8/9/10 | |

The grievant is requesting to be tested for Dyslexia.

Investigation with the Education Department indicates that there is no evidence in the grievants record that he received any accommodations while attending public school. In addition the grievant is above the age outlined in Directive 4805 for referral for evaluation.

Per Directive 4805 II
E. Eligible Inmate - is an under twenty-one inmate with a documented disability and is attending education programs.
Inmates continue to be eligible until the end of the school year in which they turn 21.

Directive 4805 III
D. Referral process - Under twenty-one inmates suspected of having an educational disability shall be referred to the CSE chairperson or the education supervisor for an individual evaluation.

Per prior CORC GH-66105-08 "CORC notes that currently the Department has no means to test the grievant for dyslexia."

***Grievance is denied

RL

*

---

**Appeal   Statement**

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk.  You have seven (7) calendar days from receipt of this notice to file your appeal.  Please state why you are appealing this decision to C.O.R.C.

I am being discriminated against.
See page attache

_____          _4/18/10_
M. TORRES                                          Date
Grievant's Signature

_____          _____
Grievance  Clerk's  Signature                      Date

Form 2133 (Rev. 2/89)

# Appeal Statement

In the past, I have shown Ms. Ellert C. Gertraud #20501, Court documents that state, I have a lerarning disabilities and also my teacher and one of her co-workers that been helping me for over 10 yares spoke with Ms. Ellert about my lerarning disabilities. Even though my teacher and her co-workers don't have psychology trainin to determine my limite capacity on whether or not I have "Dylexia". But from working with me over 10 years they both can tell that I have a lerarning disabilities also Ms. Ellert, told my teacher to removed from School because I was not progressing in School.

I worte to Ms. Linda Hollmen, Director of Edllcatio regarding testing accommodations for the "TRB test" she state that the documentation I provide shoud not be more then 5 years old. I've been in prison for over 18 years and my shool documentation are even oilder, so would I have to be tested angian, so can get the accomentation I need.

Directive #4804, state that "Inmates with disabilities" lay request any reanable accommodations which would allow the inmates to participate sucessfully in the Education program. See irective #4804, Page (5) Section (F); ~~the could only could exceed the...~~

Directive #4804, also state that all Inmates mast obtain a G.E.D if her or she want to be eligible for good time or, he or she want make there parole bord. See page (6) section (C). The only one that are not Mandate to obtain here G.E.D. are Inmates that are 65 or older. see Page (5) section (D).

Directive #4805, ~~is~~ is only for inmates under 21 years of age, not for adults Inmates; but directive #4804 is and it does not state that adults inmates can not get eanable accomodation see page (5) section (F).

How I am and othe prisoners' are sirpose to ~~rehabilit~~ ehabilitate our self ofr Society, if we are not getting the help needit?

I feel my appeal sould be garnit because t will help me and other prisoners with lerarning disabilities get the help needit so we participate equally in ~~~~ prosrans as those who dot heve learning disabilities. It would also help our teachers fine out who have dyslexia and other lerarning disabilities, so they can give us the help needit.

CC: file MT

Grievant's Signature
M. TORRES 95A0010
Date send: 4/18/10

*Torres 75A0010*

| STATE OF NEW YORK<br>DEPARTMENT OF<br>CORRECTIONAL SERVICES | Grievance Number<br>GH-69267-10 | Desig./Code<br>I/8 | Date Filed<br>3/22/10 |
|---|---|---|---|
| | Facility<br>Green Haven Correctional Facility | | |
| | Title of Grievance<br>Test For Dyslexia | | |
| **INMATE GRIEVANCE PROGRAM**<br>**CENTRAL OFFICE REVIEW COMMITTEE** | Director's Signature | | Date<br>7/14/10 |

7/14/10

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied. CORC upholds the determination of the Superintendent for the reasons stated.

Contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff. Education Supervisor E... states that the grievant was in ABE from 5/01-7/04 when he was promoted to Pre-GED. He was removed from Pre-GED on 7/26/09, but was placed back in school on 7/27/09 after speaking with the Education Supervisor and his teacher. He was later removed from school on 3/7/10 for disciplinary reasons.

CORC notes that the Department currently has no means to test the grievant for dyslexia. CORC further notes that the grievant may write to whomever he wishes regarding this complaint.

In addition, a disciplinary hearing may be appealed in accordance with 7 NYCRR, Chapter V, which affords the opportunity to remedy any factual or procedural errors in a disciplinary report. Further, Directive #4040, Section 701.6 (k) (1). states in part: ...no copies of the grievance documents may go into an employee's file without the direct written consent of the employee.

In regard to the grievant's appeal, CORC asserts that all relevant information must be presented at the time of filing in order for a proper investigation to be conducted at the facility level. CORC has not been presented with any documentation that the grievant has dyslexia.

SE/dz

**Response of IGRC:**

2 staff agree with investigation

2 Reps recommends that grievant be granted his accommodations, per Directive 4804. It adds in the defense. under 4804; II.(6)" do not apply to the grievant."

See: Directive 4804, 2614

Date Returned to Inmate _____   IGRC Members _____

Chairperson _____

Return within 7 calendar days and check appropriate boxes.*

☐ I disagree with IGRC response and wish to appeal to the Superintendent.

☐ I agree with the IGRC response and wish to appeal to the Superintendent.

☒ I have reviewed deadlocked responses. Pass-Thru to Superintendent

☐ I apply to the IGP Supervisor for review of dismissal

Signed _____N. Torres_____          7/16/10
           Grievant                        Date

_____          _____
Grievance Clerk's Receipt              Date

_____

*To be completed by Grievance Clerk.*

Grievance Appealed to the Superintendent _____
                                              Date

Grievance forwarded to the Superintendent for action _____
                                                          Date

*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

TORRES  95A0010          JI-17



| | STATE OF NEW YORK | Grievance Number<br>GH-69843-10 | Desig./Code<br>I/8 | Date Filed<br>7/7/10 |
|---|---|---|---|---|
| | DEPARTMENT OF<br>CORRECTIONAL SERVICES | Facility<br>Green Haven Correctional Facility | | |
| | | Title of Grievance<br>Submit For Testing | | |
| **INMATE GRIEVANCE PROGRAM**<br>**CENTRAL OFFICE REVIEW COMMITTEE** | | Director's Signature | | Date<br>10/6/10 |

10/6/10

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied. CORC upholds the determination of the Superintendent for the reasons stated.

CORC advises the grievant that the Department currently has no means to test him for dyslexia. CORC advises the grievant to address any medical concerns he has with his vision through facility sick call procedures.

With respect to the grievant's appeal, CORC asserts that all relevant information must be presented at the time of filing in order for a proper investigation to be conducted at the facility level. CORC has not been presented with any documentation that the grievant has dyslexia.

RJ/sl
-------------------------------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------------------------------

| | Grievance Number | Dispty/Code | Date Filed |
|---|---|---|---|
| **DEPARTMENT OF** **CORRECTIONAL SERVICES** | **Facility** Green Haven Correctional Facility | | |
| | **Title of Grievance** Diagnose With Dyslexia | | |
| **INMATE GRIEVANCE PROGRAM** **CENTRAL OFFICE REVIEW COMMITTEE** | **Director's Signature** *Lurdquist, Asst* | | **Date** 11/19/08 |

11/19/08

### GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, and upon recommendation of the Division of Health Services, the action requested herein is hereby denied.  CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that currently the Department has no means to test the grievant for dyslexia.  CORC advises the grievant to address any medical concerns he has with his vision through facility sick call procedures.

Contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff.

JH/

----------------------------------------------------------------------------------------------------
----------------------------------------------------------------------------------------------------

Mr. Michael Torres: 95A0010
Green Haven Correctional Facility
Post Office Box  4000
Stormville, New York 12582

July 2, 2010

TO: Inmate Grievance Committee
    Green Haven Correctional Facility
    Post Office Box 4000
    Stormville, New York 12582

RE: Arbitrary Discrimination in Academic Programming:

**TO THE INMATE GRIEVANCE COMMITTEE:**

Grievant has been enrolled in academic programming for over several years. Each time grievant is compelled to take a mid-term test to exhibit his progress, he fails, thereby inhibiting him from moving on to the next level.

Grievant has repeatedly attempted to have the Education Dept. at the Green Haven Correctional Facility submit him for special testing to ascertain grievant's learning impediment without success.

On several occasions over the past several years grievant has tried to explain to the School Officials that he has a learing disability, which prevents him from advancing and or making any progress which would enable him to obtain his G.E.D.

As a result of the Education Departments deliberate indifference to grievant's serious learning disability; they have arbitrarily and capriciously discriminated against him based upon his inability to comprehend the material being provided to him by the school officials.

<u>ACTION REQUESTED</u>

That the Education Department be directed to undertake the task of providing grievant with a variety of test to ascertain exactly what his learning disaibility is so that they can furnish grievant with the appropriate learning material to assist him inadvancing towards achieving his G.E.D.

CC:File/MT

Respectfully,

M. TORRES

Michael Torres 95A0010

## Appeal Statement

CORC stated that all relevant information must be presented at the time of filing for a proper investigation to be conducted at the facility level. Points 1 through 4 demonstrate that I followed all the proper channels in all three of my grievances for a proper investigation. See points 1 through 4.

### Point 1

A proper investigation was never conducted by Ms. Ellert C. Gertraud #20501 Education Supervisor General and Deputy Superintendent of programs Robert F. Cunningham 20004, as to whether or not I have a learning disability, nor my request for reasonable accomodation granted.

In my legal files, and medical file, are documentation that reasonable accomodation for inmate with disabilities No. 2614 forms, which I sent to Ms. Gertraud on 7/21/09, and to DSP Cunningham on 2/26/10, so they can have access and look into my records and properly investigate this matter to see that I have a learning disability.

According to directive No. 4804 Academic Education Program Policies section 4 Enrollment Policies letter (G) Inmate with disabilities states that: an inmate with a disability may request any reasonable accommodation which would allow the inmate to participate successfully in the educational program. This applies to me and this is what I am asking for. It would be in accordance with Dir. 4804. Directive No. 4805 does not apply to me because that is for inmates under the age of 21. It is not for adult inmates, and it does not state that adult inmates cannot be provided with reasonable accomodations. However, Dir. No. 2614 applies, and is in accordance with my situation concerning my disability and the reasonable accomodations for inmates with a disability. I am not asking for special education. I am asking for reasonable accommodations that can assist me with my learning disability. I believe it will also assist me with due process in school. It would greatly help me when I take exams. The Time limit for inmates who have no problems, or learning disabilities should not be given the same time limit for a person as myself who has "**Dyslexia**, **ADD**, and **ADHD**" or any learning disorders.

### Point 2

In the past I have shown Ms. Gertraud legal documents that state that I have a learning disability and was receiving special help on numerous occassions. i.e., school subjects, legal matters etc.. It is also a fact that one of my teachers, and co-workers, who had been assisting me for the past 10 years had informed Ms. Gertraud of my condition. Ms. Gertraud paid no real consideration to the fact that they vouched for me and my condition.

The issue is not whether I received proper accommodations while attending public school. The issue is that I have a

1

learning disability and I am entitled to receive reasonable accommodations under **Title II of the Americans with Disabilities Act Section 504 of the Rehabilitation Act of 1973**.

### Point 3

Correctional Officials statement that: **"The Department has no means to test prisoners with Dyslexia or any learning disabilities"** is false. As you already know these programs are federally funded. There should be no reason for prison officials to deny me reasonable accommodations for my disability. This means that the department would have to have a specialist come in and conduct the necessary testing.

I need testing to find out how serious my disability is. This will allow me to fully participate in, and benefit accordingly from the educational programs available. The results of the test will also demonstrate to teachers, and the like that I indeed have learning difficulties. It will also assist them with proper accomodations for me. My request should be granted. Without the test, I am unable to benefit and participate properly in the programs and services. As well as, receive grade 4 pay. This would be discrimination against me because of my disability

### Point 4

Lastly, my grievances were misappropriately investigated. Directive 4040, §701.6(e)(1) states that formal interviews with staff members, if necessary to an investigation, should be conducted jointly by an inmate and staff representative whenever feasable. Employees should be questioned in a diplomatic, non-adversarial manner. §701.6(e)(2) further states that if inmate representatives cannot accompany staff representatives on an investigation because of security restrictions, and if interviews cannot be conducted in the grievance office or through less formal means (e.g., by telephone), the inmate representatives shall provide the staff representatives with the questions they would like answered. The staff representatives shall make every effort to obtain answers for the inmate representatives. In this matter, no inmate or other staff member was afforded the opportunity to partake in the requested investigation. None of the requisites of the Sections mentioned above were adhered to. Instead, Ms. Gertraud conducted the investigation herself even though my grievance was against her actions specifically. Clearly, the action taken had the propensity to be unfair, bias, and prejudicial.

Respectfully submitted,

M. Torres

Michael Torres
Din #95A0010

cc.: file/MT

2

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

# INMATE PROGRESS REPORT

(12/05)

CORRECTIONAL FACILITY: Green Haven   NAME OF PROGRAM: Pre-GED 1

NAME: Torres, Michael   DIN # 95 A 0010   HOUSING UNIT: BG-346   DATE: 10/30/09

CHECK ONE:

___ MAY INCREASE
___ MAY DECREASE
_✓_ GENERAL EVALUATION
___ FINAL EVALUATION

READING LEVEL ___
GED OR H.S. DIP.   YES ___   NO ___
DATE ENTERED PROG.   8/13/01
PAY ITEM NUMBER   5222.11

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE/PUNCTUALITY | | ✓ | | | |
| INTEREST IN PROGRAM ASSIGNMENT | | ✓ | | | |
| EFFORT AND INITIATIVE | | ✓ | | | |
| ATTITUDE TOWARD PEERS | | ✓ | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | | | ✓ | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | ✓ | | | |
| ABILITY TO FOLLOW DIRECTIONS | | ✓ | | | |
| QUALITY OF WORK | | ✓ | | | |
| DISPLAYS SELF CONTROL | | | ✓ | | |
| DEPENDABILITY | | ✓ | | | |
| APTITUDE/EMPLOYABILITY | | | ✓ | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

_____

JOB TITLES, OR SPECIAL SKILLS ACQUIRED:

_____

FORM 3250 (12/05)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

# INMATE PROGRESS REPORT

CORRECTIONAL FACILITY _____  NAME OF FROGRAM _____

NAME: _____ DIN # _____ HOUSING UNIT _____ DATE: 7/28/08

CHECK ONE:

PAY INCREASE _____    READING LEVEL _____
PAY DECREASE _____    GED OR H.S. DIP. YES___ NO___
GENERAL EVALUATION ✓    DATE ENTERED PROG. 5/13/11
FINAL EVALUATION _____    PAY ITEM NUMBER 53.22.31

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE/PUNCTUALITY | | ✓ | | | |
| INTEREST IN PROGRAM ASSIGNMENT | | ✓ | | | |
| EFFORT AND INITIATIVE | | ✓ | | | |
| ATTITUDE TOWARD PEERS | | ✓ | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | | ✓ | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | ✓ | | | |
| ABILITY TO FOLLOW DIRECTIONS | | ✓ | | | |
| QUALITY OF WORK | | ✓ | | | |
| DISPLAYS SELF CONTROL | | ✓ | | | |
| DEPENDABILITY | | | ✓ | | |
| APTITUDE/EMPLOYABILITY | | | ✓ | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED:

GENERAL COMMENTS:

INMATE'S SIGNATURE

EMPLOYEES'S SIGNATURE    TITLE    DATE

DISTRIBUTION: White -Guidance Unit, Yellow -Inmate, Pink -Evaluator

FORM 3250 (12/05)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

# INMATE PROGRESS REPORT

CORRECTIONAL FACILITY _GHCF_    NAME OF PROGRAM _PG ED 1 (AM)_

NAME: _Torres, Michael_    DIN # _95AC010_    HOUSING UNIT _B6-366_    DATE: _4/21/08_

CHECK ONE:

PAY INCREASE _____    READING LEVEL _____

PAY DECREASE _____    GED OR H.S. DIP.    YES _✓_  NO __

GENERAL EVALUATION _✓_    DATE ENTERED PROG. _8/3/01_

FINAL EVALUATION _____    PAY ITEM NUMBER _522211_

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE/PUNCTUALITY | | ✓ | | | |
| INTEREST IN PROGRAM ASSIGNMENT | ✓ | | | | |
| ...ORT AND INITIATIVE | ✓ | | | | |
| ...ITUDE TOWARD PEERS | | ✓ | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | | ✓ | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | ✓ | | | |
| ABILITY TO FOLLOW DIRECTIONS | | | ✓ | | |
| QUALITY OF WORK | | ✓ | | | |
| DISPLAYS SELF CONTROL | | ✓ | | | |
| DEPENDABILITY | | | ✓ | | |
| APTITUDE/EMPLOYABILITY | | | ✓ | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

_Mr. Torres is a very respectful + dedicated student. Trying very hard to overcome learning disabilities and increase his academic levels._

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED:

GENERAL COMMENTS:    _Pleasure to have in class!_

M. Torres

INMATE'S SIGNATURE

EMPLOYEES'S SIGNATURE    _Teacher IV_    _4/25/08_
                          TITLE              DATE

DISTRIBUTION: White -Guidance Unit, Yellow -Inmate, Pink -Evaluator